UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Derrick David Hentschel

    v.                                  Case No. 17-cv-006-LM

Nancy A. Berryhill, Acting
Commissioner, Social
Security Administration


**REPORT AND RECOMMENDATION**


    Pursuant to 42 U.S.C. § 405(g), Derrick Hentschel,
proceeding pro se, moves to reverse the Acting Commissioner's
decision to deny his applications for Social Security disability
insurance benefits, or DIB, under Title II of the Social
Security Act, 42 U.S.C. § 423, and for supplemental security
income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Acting
Commissioner, in turn, moves for an order affirming her
decision.  Those motions are before this magistrate judge for a
report and recommendation.  For the reasons that follow, the
decision of the Acting Commissioner, as announced by the
Administrative Law Judge ("ALJ") should be affirmed.


**I.  Standard of Review**

    The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'"  Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per

curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

    As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts."  Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" <u>Currier v. Sec'y of HEW</u>, 612 F.2d 594, 597 (1st Cir. 1980) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." <u>Irlanda Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam). Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. <u>Background</u>

The parties have submitted a Joint Statement of Material Facts. That statement, doc.no. 31, is part of the court's record and will be summarized here, rather than repeated in

full.

Hentschel filed his applications for DIB and SSI on November 13, 2013, at which time he was incarcerated in the New Hampshire State Prison ("NHSP"). He was released in March of 2014, was reincarcerated on a parole violation from December of 2014 through February of 2015, was arrested again on April 23, 2015, and is now serving a term of six to fifteen years in the NHSP.

Hentschel has been diagnosed with physical impairments affecting his back and his left knee, as well as mental impairments including post-traumatic stress disorder ("PTSD"), amphetamine dependence, cocaine abuse, cannabis dependence, and antisocial personality disorder.

With regard to Hentschel's physical capacity for work, the record includes opinions from Dr. Peter Loeser, Dr. Jonathan Jaffe, Dr. Robert Bassett, and Dr. Oliver Hertfort.

In April 2014, Dr. Loeser performed a consultative examination of Hentschel in which he was asked to consider a left knee injury, a back injury, a head injury, and Hepatitis C.[1] In his examination report, Dr. Loeser identified no positive

_____

[1] "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request." 20 C.F.R. §§ 404.1519 & 416.919.

findings associated with Hentschel's back, but noted several

positive findings associated with his left knee, and gave the

following diagnosis: "Left knee [degenerative joint disease]

with noted past meniscus surgery with apparent relatively acute

changes.  Low back pain of uncertain etiology."  Administrative

Transcript (hereinafter "Tr.") 849.  As for Hentschel's

functional capacity, Dr. Loeser wrote:

> The patient states [that] these symptoms [i.e., left
> knee and low back pain] are having a significant
> impact on overall function, and based on the current
> findings, there is sufficient evidence to support a
> degree of impact on the patient's ability to function
> related to his left knee.

Id.

After Dr. Loeser performed his consultative examination,

Dr. Jaffe, a consulting physician who neither treated nor

examined Hentschel, assessed Hentschel's physical residual

functional capacity ("RFC").[2]  But, Dr. Jaffe's opinions are not

at issue here, so there is no need to describe them in detail.

On July 1, 2014, Dr. Robert Bassett, an orthopaedic surgeon

who had been treating Hentschel for several months, wrote two

letters describing Hentschel's knee condition and its effects on

---

[2] "Residual functional capacity" is a term of art that means "the
most [a claimant] can still do despite [his] limitations." 20
C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1).

his ability to function.  One letter states, in full:

> Derrick Hentschel has endstage osteoarthritis of his
> left knee and requires a knee arthrodesis.  He is too
> young for a total knee [replacement].  He is not a
> candidate for work involving prolonged standing or
> walking.[3]

Tr. 857.  In his second letter, addressed "to whom it may

concern," Dr. Bassett noted a diagnosis of severe

tricompartmental osteoarthritis of Hentschel's left knee,

described the various forms of treatment Hentschel had received,

and then opined:

> This treatment has been only of marginal effect for
> him.  His only reasonable orthopaedic treatment at
> this stage is a right knee fusion, fusing his knee in
> full extension, which would be in [and] of itself a
> disabling problem.  His knee pain is severe but that
> level of disability is more than he can tolerate at
> this stage.  Currently, any sort of work involving
> torquing, twisting, standing, [or] walking is very
> problematic for him.  He is seeking social security
> assistance, and this appears to be quite appropriate
> for him at this stage.

Tr. 951.

In August 2014, another treating physician, Dr. Oliver

Hertfort of Associates in Medicine, wrote a letter to whom it

may concern which states, in full:

> Mr. Hentschel is a patient at Associates in Medicine.
> He has premature and significant degenerative disease
> of the thoracic and lumbar spine with narrowing of the

---

[3] Arthrodesis is "[t]he stiffening of a joint by operative
means."  Stedman's Medical Dictionary 160 (28th ed. 2006).

canal and nerve exit sites.  In addition he has end
stage degenerative disease of the knee which usually
requires total knee replacement but is not indicated
because of his young age.

In my medical opinion the patient's joint disease
qualifies him for social security and disability
status.

Tr. 992.

Finally, in December 2014, Dr. Bassett completed a Medical

Source Statement of Ability to do Work-Related Activities

(Physical) on Hentschel.  In it, he opined that Hentschel could

occasionally lift/carry up to 20 pounds, sit for one hour at a

time and six hours in an eight-hour workday, stand for one hour

at a time and two hours in an eight-hour workday, and walk for

30 minutes at a time and two hours in an eight-hour workday.  He

further opined that Hentschel needed a cane to ambulate, but

could use his free hand to carry small objects while using a

cane.  In addition, Dr. Bassett opined that Hentschel could

continuously use his hands for reaching, handling, fingering,

feeling, and pushing/pulling, and could frequently use his feet

to operate foot controls.  As for postural activities, Dr.

Bassett opined that Hentschel could never climb stairs, ramps,

ladders, or scaffolds; balance; stoop; kneel; crouch; or crawl.

As for environmental limitations, Dr. Bassett opined that

Hentschel could never tolerate exposure to unprotected heights

or operate a motor vehicle, could occasionally tolerate

vibrations, could frequently tolerate moving mechanical parts,

and could continuously tolerate humidity, wetness, dust, odors,

fumes, pulmonary irritants, extreme cold, extreme heat, and very

loud noise.  Dr. Basset also opined that Hentschel was capable

of: shopping; traveling without a companion for assistance;

ambulating without using a wheelchair, walker, or two canes or

two crutches; walking a block at a reasonable pace on rough or

uneven surfaces; using standard public transportation; climbing

a few steps at a reasonable pace with the use of a single hand

rail; preparing a simple meal and feeding himself; caring for

personal hygiene; and sorting, handling, and using paper/files.

    With regard to Hentschel's mental capacity for work, the

record includes opinions from Dr. Dennis Becotte, Dr. Craig

Stenslie, and Dr. Bassett.[4]

    In March 2014, Dr. Becotte performed a consultative

psychological examination of Hentschel and produced a Mental

Health Evaluation Report on him.  Dr. Becotte indicated

diagnoses of mixed personality disorder with aspects of

borderline personality and antisocial personality disorder and

---

[4] The record also includes a Medical Source Statement of Ability
to do Work-Related Activities (Mental), completed by David
Cantagallo, that the form contains virtually no opinions of any
sort on Hentschel's mental RFC.

stimulant use disorder.  With respect to Hentschel's then-current level of functioning, Dr. Becotte gave the following opinions:

> Mr. Hentschel has the ability to complete all activities of daily living.
>
> . . . .
>
> Mr. Hentschel has social skills and can interact appropriately with others should he choose to do so. He is somewhat undersocialized, has spent a lot of time of his life either locked up or incarcerated, and has antisocial personality disorder.  He has elected to interact with others many times in a violent, aggressive, and conflictual manner.  However, should he choose to do so as in the present interview, he is appropriate, mannered, and can interact effectively one-on-one.
>
> . . . .
>
> Mr. Hentschel can understand and remember instructions.
>
> . . . .
>
> Mr. Hentschel has the ability to concentrate and complete tasks.
>
> . . . .
>
> Mr. Hentschel has the ability to maintain regular attendance and schedules, concentrate, show good persistence and pace, and understand and remember information on the job.  He could handle stressors expected in a full-time work like situation, and he has skills to interact with others appropriately should he want to do so.

Tr. 816-17.

After Dr. Becotte performed his consultative examination, Dr. Stenslie, a consulting psychologist who neither treated nor examined Hentschel, conducted a psychiatric review technique ("PRT")[5] assessment of Hentschel then went on to assess Hentschel's mental RFC. As with Dr. Jaffe's opinions regarding Hentschel's physical RFC, Dr. Stenslie's opinions are not at issue here, and so there is no need to describe them in detail.

Finally, the record includes a Medical Source Statement of Ability to do Work-Related Activities (Mental), completed by Dr. Bassett in July 2015. On that form, Dr. Bassett identified himself as an orthopaedic surgeon and further noted: "psychiatry and substance abuse are not my specialties." Tr. 1167. Be that as it may, Dr. Bassett identified no limitations on Hentschel's ability to understand, remember, and carry out instructions, but also opined that Hentschel had marked difficulties in interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. When asked to identify the particular medical signs, laboratory findings,

---

[5] The Social Security Administration uses the PRT to evaluate the severity of mental impairments. See 20 C.F.R. §§ 404.1520a & 416.920a (describing the PRT).

or other factors that supported his assessment, Dr. Bassett

responded:

> Terminated from Dartmouth-Hitchcock pain clinic for
> "violent behavior" documented in medical record.  Has
> history of substance abuse associated with spinal
> stenosis and end stage knee arthritis.

Tr. 1166.

After conducting a hearing, the ALJ issued a decision that

includes the following relevant findings of fact and conclusions

of law:

> 3.  The claimant has the following severe impairments:
> osteoarthritis/degenerative changes (left) knee;
> [status post] partial medial and lateral meniscectomy
> (8/13); patella tendinosis; degenerative disc disease
> (lumbar and thoracic spines); personality disorder;
> post-traumatic stress disorder; and polysubstance
> abuse disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals the severity of one of the listed impairments
> in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
> and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> the undersigned finds that the claimant has the
> residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) except he is able to
> lift and/or carry up to 20 pounds occasionally and up
> to 10 pounds frequently; to sit for at least 6 hours
> in an 8-hour workday; and to stand and walk for a
> total of up to 2 hours in an 8-hour workday, but not

at one time.  He is able to stand for a total of up to
one hour at a time and walk for a total of ½ hour at a
time.  When ambulating, the claimant would need to use
an assistive device such as a cane.  He is unable to
climb ladders, ropes, or scaffold; and/or to crawl or
kneel.  He is able to crouch and/or climb stairs
rarely, which is further defined as less than or equal
to 5% of the workday.  He is able to climb ramps
occasionally as well as to perform all other remaining
postural activities occasionally.  He must avoid
unprotected heights and driving while on the job.  He
is able to occasionally be exposed to vibrations such
as hand-held power tools.  He is able to understand,
remember and carry out instructions without
limitation; but would need an environment where tasks
are generally performed in a solitary manner but could
tolerate performing tandem or teamwork tasks for up to
10% of the workday and could otherwise engage in brief
and superficial interaction with co-workers.  He can
collaborate with supervisors on routine matters and is
able to have incidental contact with the general
public, which means that dealing with the general
public cannot be part of his job duties.

. . . .

6.  The claimant is unable to perform any past
relevant work (20 CFR 404.1565 and 416.965).

. . . .

10.  Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 38-39, 40, 43, 48, 49.  Based upon the response to a

hypothetical question that the ALJ posed to a vocational expert

("VE"), and that incorporated the RFC recited above, the ALJ

determined that Hentschel was able to perform the jobs of bench

assembler, table worker, and touch up screener.

## III. <u>Discussion</u>

### A.   <u>The Legal Framework</u>

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether the ALJ correctly determined that claimant was not under a disability from September 30, 2010 through September 25, 2014.

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  <u>See</u> 20 C.F.R. §§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is

granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

[o]nce the [claimant] has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform.  Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

[i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

**B.    Hentschel's Claims**

Hentschel claims that the ALJ and/or the SSA erred by: (1) failing to consider several of his physical and mental diagnoses; (2) giving too much weight to the opinions of Drs. Loeser and Becotte while giving too little weight to the opinions of Drs. Bassett and Hertfort; (3) failing to contact his treating sources to perform consultative examinations; and (4) finding that a significant number of jobs existed in the national economy that he could perform despite the fact that multiple factors make it unlikely that he will be able to find a job after his release from prison.  None of plaintiff's claims of error entitle him to a remand.

    1.    Missing Diagnoses

Hentschel's Motion to Reverse includes sections captioned "Missing Mental Health Diagnosis" and "Missing Physical Health Diagnosis."  However, he identifies no reversible error in the ALJ's handling of the diagnoses he identifies as "missing" from her decision.

With respect to mental-health diagnoses, Hentschel recounts various diagnoses he received from 1994 through 1999, while he was living in several group homes.  But his mental health during

the 1990s has no bearing on the question before the ALJ, which was whether he was disabled between September 30, 2010 and September 24, 2014.  He also mentions an examination conducted in March of 2014 by the New Hampshire Department of Corrections that resulted in diagnoses of post-traumatic stress disorder, anti-social personality disorder, and polysubstance abuse disorder.  But, in her decision, the ALJ listed personality disorder, post-traumatic stress disorder, and polysubstance abuse disorder as severe impairments.  So the court is at a loss to understand how Hentschel sees those as "missing diagnoses."  In short, the ALJ committed no error in her handling of Hentschel's mental-health diagnoses.

    With respect to physical-health diagnoses, Hentschel mentions a 1999 injury to his left knee and subsequent degenerative changes to that joint, and criticizes the ALJ for failing to take into consideration a diagnosis of his back condition.  But, the ALJ found both a severe knee impairment and a severe back impairment, and she expressly mentioned the diagnosis of multilevel degenerative changes to the lumbar spine that Hentschel identifies as missing from her decision.  Thus, the ALJ committed no error in her handling of Hentschel's physical-health diagnoses.

2.  <u>Medical Opinions</u>

Hentschel claims that the ALJ erred in weighing the medical source opinions pertaining to both his physical and mental impairments.  The court considers each category of opinions in turn.

### a. Physical Impairments

With respect to Hentschel's physical RFC, the record includes opinions expressed in: (1) Dr. Loeser's examination report; (2) Dr. Jaffe's RFC assessment; (3) Dr. Bassett's two July 2014 letters; (5) Dr. Hertfort's August 2014 letter; and (5) Dr. Bassett's Medical Source Statement.  Hentschel claims that the ALJ erred by giving too much weight to the opinions in Dr. Loeser's report and too little weight to the opinions in the letters written by Drs. Hertfort and Bassett.  He does not, however, mention the opinions in Dr. Bassett's Medical Source Statement.  The court can discern no error in the ALJ's handing of the opinions at issue.

To begin, the applicable regulations define the term "medical opinions" as

> statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1427(a)(1) & 416.927(a)(1).  That definition,
however, excludes opinions on issues reserved to the
Commissioner, such as whether a claimant is disabled.  See 20
C.F.R. §§ 404.1527(d)(1) & 20 C.F.R. 416.927(d)(1).

　　　With regard to the evaluation of medical opinions, the
Social Security Administration ("SSA"), and by extension, an
ALJ, gives the greatest weight, and sometimes even controlling
weight, to opinions from medical sources who have treated a
claimant, lesser weight to opinions from medical sources who
have examined but not treated a claimant, and the least weight
to opinions from sources who have neither treated nor examined a
claimant.  See 20 C.F.R. §§ 404.1527(c)(1)-(2) & 416.927(c)(1)-
(2).  However, an ALJ "will not give any special significance to
the source of an opinion on issues reserved to the
Commissioner."  20 C.F.R. §§ 404.1527(d)(3) & 416.927(d)(3).  At
the same time, "adjudicators must always carefully consider
medical source opinions about any issue, including opinions
about issues that are reserved to the Commissioner," Social
Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (S.S.R.
July 2, 1996), and while such opinions "must never be ignored,"
id. at *3, they "are never entitled to controlling weight or
special significance," id. at *2, even when rendered by a

treating source, see id.  With the foregoing principles in mind,
the court turns to Hentschel's argument.

Hentschel criticizes the ALJ for giving too little weight
to Dr. Bassett's statement, in his July 1, 2014, letter, that
"social security assistance . . . appears to be quite
appropriate for him at this stage," Tr. 951.  However, the ALJ
gave "great weight" to the medical opinions expressed in Dr.
Bassett's July 1 letter, such as Dr. Bassett's opinion that "any
sort of work involving torquing, twisting, standing, [or]
walking is very problematic for him."  Id.  Indeed, the ALJ gave
greater weight to Dr. Bassett's opinions than he gave to those
Dr. Loeser's opinions, which Hentschel accuses the ALJ of giving
too much weight to.  Moreover, the statement to which Hentschel
says the ALJ should have given greater weight is an opinion on
an issue reserved to the Commissioner, which was entitled to no
special significance, see SSR 96-5p, 1996 WL 374183, at *2.  In
short, the ALJ committed no error in her handling of Dr.
Bassett's opinion.  Moreover, as the Acting Commissioner points
out, the RFC that the ALJ crafted for Hentschel draws heavily
from the opinions that Dr. Bassett expressed in his Medical
Source Statement, which were more favorable to Hentschel than
the opinions in the RFC assessment by the consulting physician,

Dr. Jaffe, to which the ALJ gave limited weight.

Hentschel also criticizes the ALJ for giving too little weight to Dr. Hertfort's statement, in his August 8, 2014, letter, that Hentschel's "joint disease qualifies him for social security and disability status," Tr. 992.  The ALJ did not mention Dr. Hertfort's opinion in her decision, and the Acting Commissioner correctly concedes that the ALJ erred by ignoring that opinion.  However, the court agrees with the Acting Commissioner that the ALJ's error does not entitled Hentschel to a remand.  As the court of appeals has explained, "[w]hile an error of law by the ALJ may necessitate a remand . . . remand is not essential if it will amount to no more than an empty exercise." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (citing DaRosa v. Sec'y of HHS, 803 F.2d 24, 26 (1st Cir. 1986); Dantran, Inc. v. U.S. Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)).  Under the circumstances of this case, it would be difficult to imagine a more empty exercise then a remand with instructions to the ALJ to consider Dr. Hertfort's opinion that Hentschel's "joint disease qualifies him for social security and disability status." Tr. 992.  First of all, that is an opinion on an issue reserved to the Commissioner, to which no special

significance is due.  Moreover, it is very poorly supported.
See 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3) (identifying
supportability as factor entitling medical opinion to weight).
While Dr. Hertfort's letter identifies two diagnoses and notes
"narrowing of the canal and nerve exit sites," Dr. Hertford does
not assess the severity of Hentschel's impairments according to
the criteria used in the applicable regulations, i.e., 20 C.F.R.
Part 404, Subpart P, Appendix 1, nor does he identify any
specific functional limitations resulting from Hentschel's
impairments.  Rather, he merely opines that Hentschel is
disabled.  Remand to consider that opinion would be an empty
exercise.

    In sum, while the ALJ erred by failing to consider Dr.
Hertfort's opinion, she committed no reversible error in
handling the opinions in the letters written by Drs. Bassett and
Hertfort.

### b. Mental Impairments

    With respect to Hentschel's mental RFC, the record includes
opinions expressed in: (1) Dr. Becotte's Mental Health
Evaluation Report; (2) Dr. Stenslie's RFC assessment; and (3)
Dr. Bassett's Medical Source Statement.  Hentschel claims that
the ALJ erred by giving too much weight to the opinions in Dr.

Becotte's report, and appears to suggest that the ALJ should have given more weight to the opinions in Dr. Bassett's Medical Source Statement.  The court can discern no error in the ALJ's handing of the opinions at issue.

In her decision, the ALJ considered both Dr. Becotte's opinions and Dr. Bassett's opinions on Hentschel's mental RFC. In giving greater weight to Dr. Becotte's opinions than she gave to Dr. Bassett's opinions, the ALJ gave a perfectly acceptable reason for discounting Dr. Bassett's opinions: Dr. Bassett's own concession that as an orthopaedic surgeon, he had no specialization in psychiatry or substance abuse.  See 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5) (identifying specialization as one criterion for evaluating opinions from medical sources). Accordingly, the ALJ's decision to credit Dr. Becotte's opinions about Hentschel's RFC over those of Dr. Bassett is supported by substantial evidence, and thus, that aspect of the ALJ's decision provides no basis for remand.  Moreover, the ALJ included significant limitations in Hentschel's RFC related to his capacity for social interaction, so it would appear that the specific concerns identified in Dr. Bassett's Medical Source Statement were actually reflected in the ALJ's RFC assessment.

3.   <u>Consultative Examination</u>

As a subsidiary argument to his claim that the ALJ incorrectly weighed the medical opinions, Hentschel also faults the SSA for failing to contact any of his treating sources to perform a consultative examination.  That argument lacks merit.

Hentschel correctly observes that the Disability Determination Explanation Form in his case indicated the need for a consultative examination.  The applicable regulations provide that generally, a claimant's "medical source will be the preferred source for the purchased examination or test(s)."  20 C.F.R. §§ 404.1519h & 416.919h.  However, the regulations also allow the SSA to use sources other than a claimant's treating source to perform a consultative examination, <u>see</u> 20 C.F.R. §§ 404.1519i & 416.919i, and further provide that a claimant "or [his] representative may object to [his] being examined by a medical source [the SSA] has designated to perform a consultative examination," 20 C.F.R. §§ 404.1519j & 416.919j.  Here, Hentschel "does not indicate that he previously asked the [Acting] Commissioner to use any of his treating sources as consultants, or timely objected to the use of independent medical examiners," <u>Janes v. Colvin</u>, 6:15-CV-1518 (GTS), 2017 WL 972110, at *7 (N.D.N.Y. Mar. 10, 2017), and "he does not name

any particular treating source that the ALJ should have contacted for a consultative examination," id.  Thus, under the circumstances of this case, as in Janes, the use of an independent medical examiner rather than a treating source to conduct either of Hentschel's consultative examinations provides no basis for remand.

        4.   Step 5

     Hentschel's final argument is that the ALJ erred, at step 5 of the sequential evaluation process, by finding that a significant number of jobs existed in the national economy that he could perform.  Specifically, he argues that his prospects for future employment are substantially limited because employers are unlikely to hire a convicted felon or a person with his physical and mental conditions, and because, upon his release from prison, he will have no money, no place to live, and few of the tools necessary to maintain employment, such as a driver's license.  That argument is foreclosed by the applicable regulations, which provide that the SSA

> will determine that [a claimant is] not disabled if [his] residual functional capacity and vocational abilities make it possible for [him] to do work which exists in the national economy, but [he] remains unemployed because of—
>
>    (1) [His] inability to get work;

> . . . .
>
> (3) The hiring practices of employers; [or]
>
> . . . .
>
> (7) [The claimant] would not actually be hired to
> do work [he] could otherwise do.

20 C.F.R. §§ 404.1566(c)(1) & 416.966(c); see also Campbell v.
Colvin, No. 1:13-cv-00109-MP-CAS, 2014 WL 1744139, at *10 n.11
(N.D. Fla. Apr. 30, 2014) ("Plaintiff's criminal record is not a
basis on which to find him disabled.") (citing 20 C.F.R. §
404.1566(c)(7)); Williams v. Astrue, No. 3:07-cv-1030-J-TEM,
2009 WL 789899, at *11 (M.D. Fla. Mar. 23, 2009) ("[a]n
inability to obtain work or the hiring practices of employers is
not considered under the [Social Security] Regulations . . .
[t]hus, the potential negative perception employers may or may
not have regarding a four-time convicted felon is, at most
irrelevant"); Curry v. Colvin, No. 1:15CV00698, 2016 WL 1465382,
at *5 (M.D.N.C. Apr. 14, 2016) (rejecting claimant's allegation
of "disability because employers will not hire her due to her
medical conditions"); Meddaugh v. Comm'r of Soc. Sec., Civ.
Action No. 14-13131, 2015 WL 7889038, at *9 (E.D. Mich. Dec. 4,
2015) (rejecting claimant's arguments that he should be found
disabled because "employers 'will be reluctant to hire an
individual with a seizure disorder'" and "that he cannot obtain

25

any of the jobs identified by the VE . . . because the 'Michigan Secretary of State has denied him a driver's license as a result of his medical condition and he lives in a rural town at least (2) hours from a major city'" because that those "argument[s] [are] at odds with the applicable regulations"). Like the arguments in <u>Campbell</u>, <u>Williams</u>, <u>Curry</u>, and <u>Meddaugh</u>, Hentschel's step 5 argument is entirely foreclosed by 20 C.F.R. §§ 404.1566(c) and 416.966(c).

## IV. <u>Conclusion</u>

Because the ALJ has not committed a reversible error in evaluating Hentschel's claim, <u>see</u> <u>Manso-Pizarro</u>, 76 F.3d at 16, his motion for an order reversing the Acting Commissioner's decision, doc. no. 14, should be denied; the Acting Commissioner's motion for an order affirming her decision, doc. no. 28, should be granted; and the clerk of the court should be directed to enter judgment in accordance with this order and close the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the

Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

January 5, 2018

cc:  Derrick D. Hentschel, pro se
     Robert J. Rabuck, Esq.